UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLANCA GARCIA and MATILDE CABRERA, on behalf of themselves and others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>ACUSHNET COMPANY; and DOES 1 to 100, inclusive,<br><br>        Defendant. | Case No.: 3:21-cv-01581-BEN-BGS<br><br>**ORDER DENYING MOTION TO REMAND THE ACTION TO STATE COURT AND REQUEST FOR ATTORNEYS' FEES IN THE AMOUNT OF $5,775.00**<br><br>**[ECF No. 6]** |

## I. INTRODUCTION

Plaintiffs Blanca Garcia and Matilde Cabrera, on behalf of themselves and others similarly situated bring this employment action against Defendant Acushnet Company.

Before the Court is Plaintiffs' Motion to Remand. The Motion was submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure. ECF No. 12. After considering the papers submitted, supporting documentation, and applicable law, the Court **DENIES** Plaintiffs' Motion to Remand and Request for Attorneys' Fees.

## II. BACKGROUND

The crux of this Complaint is that Defendant's employees were required to travel three to five minutes every day between entering the premises and clocking in and again

when exiting the premises and clocking out. Plaintiffs allege they were not compensated for this time. Plaintiffs make the same allegations with respect to employees traveling to and from the designated meal and break area, claiming that up to ten minutes of their daily meal breaks and rest periods were spent traveling. Because of the time spent traveling to the meal and break area on the worksite, Plaintiffs allege their breaks fell short of what is required under California law.

### A.   Statement of Relevant Facts

Specifically, Plaintiffs allege the following eight claims for relief: (1) Failure to Pay Wages for All Hours Worked at Minimum Wage in Violation of Labor Code section 1194 and 1197; (2) Failure to Pay Overtime Wages for Daily Overtime Worked in Violation of Labor Code section 510 and 1194; (3) Failure to Authorize or Permit Meal Periods in Violation of Labor Code section 512 and 226.7; (4) Failure to Authorize or Permit Rest Periods in Violation of Labor Code section 226.7; (5) Failure to Timely Pay Earned Wages During Employment in Violation of Labor Code section 204; (6) Failure to Provide Complete and Accurate Wage Statements in Violation of Labor Code section 226; (7) Failure to Timely Pay All Earned Wages and Final Paychecks Due at Time of Separation of Employment in Violation of Labor Code sections 201, 202, and 203; and (8) Unfair Business Practices, in Violation of California's Business and Professions Code sections 17200, *et seq*. ECF No. 1-2 ("Compl.") at 3–4.[1]

As the basis for these eight claims for relief, Plaintiffs allege Defendant "maintained a policy, practice, and/or procedure of failing to include bonus pay" with respect to Plaintiffs' claims regarding overtime pay, meal periods, and rest periods. *Id.* at 25, ¶ 68; 27, ¶ 76; 29, ¶ 85. Plaintiffs further allege Defendant's policies, practices, and/or procedures prevented Plaintiffs from being paid all wages for the time they worked. *Id.* at 22, ¶ 53(a). Additionally, the Complaint maintains Defendant's policies, practices, and/or procedures resulted in its failure to: (1) timely pay wages; (2) provide complete and

---

[1]   Unless otherwise indicated, all page number references are to the ECF-generated page number contained in the header of each ECF-filed document.

accurate wage statements; (3) timely pay at the time of separation; and (4) adhere to California's Business & Professions Code section 17200, *et seq*. *See* Compl. at 31, ¶ 93; 32, ¶ 101; 34, ¶ 109. When describing Defendant's alleged "policies, practices, and/or procedures," Plaintiffs claim that employees were required to travel "every day" to a designated clock-in location without being compensated. *See id.* at 22–23, ¶ 54(a)–(b); 24, ¶ 64(a)–(b); 26–27, ¶ 74(a)–(b); 29, ¶ 83(a)–(b). Plaintiffs make the same allegations with respect to employees traveling to the designated meal and break area resulting in their breaks falling short of what is required. *See id.* at 26–27, ¶ 74(a)–(b); 29, ¶ 83(a)–(b).

### B. Procedural History

On July 7, 2021, Plaintiffs commenced this civil action against Defendant in San Diego County Superior Court, captioned *Blanca Garcia, et al. v. Acushnet Company, et al.*, Case No. 37-2021-00029094-CU-OE-CTL. On September 8, 2021, Defendant removed the Complaint to this Court based on diversity of citizenship and pursuant to the Class Action Fairness Act ("CAFA"). ECF No. 1 at 1, 3; *see also* 28 U.S.C. § 1332(d). On October 8, 2021, Plaintiffs filed the instant Motion to Remand. ECF No. 6 ("Motion").

## III. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Generally, federal subject matter jurisdiction exists due to the presence of a federal question, or complete diversity between the parties. *See* 28 U.S.C. §§ 1331–1332. While a plaintiff is the master of his or her complaint and may choose where to file suit, removal qualifies as "an important check on the plaintiff's mastery." *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016). When a plaintiff files a civil action in state court, a defendant in that case may remove it to federal court so long as the case could have originally been filed in federal court, either due to the existence of a federal question or diversity jurisdiction. *See* 28 U.S.C. § 1441(a); *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997).

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from

any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (citing 28 U.S.C. § 1332(d)). "To remove a case from a state court to a federal court, a defendant must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83 (2014) (quoting 28 U.S.C. § 1446(a)).

## IV. DISCUSSION

Plaintiffs do not dispute that diversity of citizenship exists, or that the minimum number of class members exceeds 100. Instead, Plaintiffs challenge the amount in controversy asserting that it does not exceed $5,000,000. Motion at 12–14. Plaintiffs also request attorneys' fees in the amount of $5,775.00. *Id.* at 15–16.

### A. Amount in Controversy

Where the amount in controversy is ambiguous or not stated in the complaint, the "removing party must initially file a notice of removal that includes 'a plausible allegation that the amount in controversy exceeds the jurisdiction threshold.'" *Ibarra*, 775 F.3d at 1995 (quoting *Dart*, 574 U.S. at 89). The notice of removal "need not contain evidentiary submissions." *Ibarra*, 775 F.3d at 1997 (quoting *Dart*, 574 U.S. at 84). However, "[w]hen a plaintiff contests the amount in controversy allegation, 'both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.'" *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 992 (9th Cir. 2022) (quoting *Dart*, 574 U.S. at 87). The burden is on the defendant to establish the amount in controversy. *Ibarra*, 775 F.3d at 1196. The defendant "must be able to rely 'on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million,' as long as the reasoning and underlying assumptions are reasonable." *Jauregui*, 28 F.4th at 992 (quoting *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015)).

Although a plaintiff may submit evidence, he or she may also challenge the defendant's assumptions without providing alternative assumptions grounded in real evidence. *Ibarra*, 775 F.3d at 1199; *see also Harris*, 980 F.3d at 700 ("A factual attack, however, need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence."); *Cummings v. G6 Hosp. LLC*, No. 19-cv-00122-GPC-LL, 2019 WL 1455800, at *4 (S.D. Cal. Apr. 2, 2019) (explaining that plaintiffs are not required to come forward with alternative violation rates of their own).

Generally, courts strictly construe removal statutes, rejecting removal jurisdiction in favor of remand to the state court if any doubts as to the right of removal exist. *Nev. v. Bank of Am. Corp.*, 672 F.3d 661, 667 (9th Cir. 2012). But "CAFA 'significantly expanded federal jurisdiction in diversity class actions.'" *Jauregui*, 28 F.4th at 994 (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 398 (9th Cir. 2010)). As such, it is incorrect to view "removal under CAFA . . . with a level of skepticism and resistance," *Jauregui*, 28 F.4th at 993, and "[t]here is no presumption against removal jurisdiction in CAFA cases." *Proctor v. Helena Agri-Enterprises, LLC*, No. 18-cv-2833 JLS-NLS, 2019 WL 1923090, at *1 (S.D. Cal. Apr. 30, 2019) (citing *Dart*, 574 U.S. at 82). Still, "[u]nder the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Ibarra*, 775 F.3d at 1199.

Plaintiffs argue Defendant fails to establish the amount in controversy exceeds $5,000,000 and instead, summarily states that the amount is met. Motion at 12. Plaintiffs contend that the only evidence provided is a declaration from Defendant's Director of Human Resources, which offers "the number of current and former employees in the class period, the average hourly rate, and the number of workdays/workweeks." *Id.* Plaintiffs contend Defendant fails to "provide the calculations and underlying evidence as to how it reached the conclusion that" the amount in controversy exceeds $5,000,000. *Id.* Plaintiffs further argue that Defendant incorrectly applies a 100 percent non-compliance rate for each

claim for relief. *Id.* at 13. Plaintiffs contend that because their Complaint alleges only a pattern and practice of violations, it is not reasonable for Defendant to assume a 100 percent violation rate. *Id.* Plaintiffs maintain Defendant provides no evidentiary basis for the application of this rate. *Id.* at 14.

Defendant retorts that Plaintiffs fail to present any evidence proving the amount in controversy is less than $5,000,000. ECF No. 10 ("Oppo.") at 8. They simply state the amount in controversy would be less if Defendant did not apply a 100 percent violation rate. *Id.* Defendant explains that the Complaint alleges violations occurred "every day" with respect to uncompensated time worked, non-compliant meal periods, and non-compliant rest periods. *Id.* at 9–10. Defendant explains the only reasonable inference, based on these allegations, is a 100 percent violation rate. *Id.* at 10. Defendant also maintains that all of Plaintiffs' allegations rely on the physical layout of Defendant's facilities and because Defendant does not change the physical layout on a day-to-day basis, the alleged violations had to occur every day and to every employee. *Id.* Defendant's Opposition alleges the amount in controversy totals $11,547,287.90 and provides specific calculations to support this figure. *Id.* at 13–21. Based on this calculation, Defendant further contends that "even with a violation rate as low as 50%, the amount-in-controversy requirement for CAFA jurisdiction is . . . satisfied." *Id.* at 8, 21.

Plaintiffs object saying that although Defendant provided calculations to support its amount in controversy, it somehow failed to establish subject matter jurisdiction at the time of removal. ECF No. 11 ("Reply") at 4. Plaintiffs do not appear to dispute the underlying numbers (regarding the number of employees, average wages, and weeks worked) provided by Defendant. *See generally* Reply. Plaintiffs only challenge Defendant's application of the 100 percent violation rate as unreasonable. *Id.* at 4.

Plaintiffs' first argument—that Defendant failed to provide evidence of the amount in controversy in its Notice of Removal—is contrary to the law. At the time of removal, Defendant was required to state, "a plausible allegation that the amount in controversy exceeds the jurisdiction threshold." *Ibarra*, 775 F.3d at 1995, 1997 (quoting *Dart*, 574

U.S. at 89). However, Defendant was not required to submit evidence at the time of removal. *Dart*, 574 U.S. at 95 ("[T]he District Court erred in remanding the case for want of an evidentiary submission in the removal notice."). Here, Defendant provides a plausible allegation in its removal notice that the amount in controversy exceeds $5,000,000.

Defendant's Notice of Removal explains that the amount in controversy for Plaintiffs' claims related to meal periods, rest periods, and pay for all wages and overtime wages, suggest a 100 percent violation rate due to the placement of the designated break and clock-in area—Defendant also notes Plaintiffs' allegations that employees had to "travel" to the designated area. ECF No. 1 at 4–5, ¶ 9(a)–(c). Regarding Plaintiffs' claim that Defendant failed to timely pay employees, Defendant states the allegations indicate that "Defendant failed to timely pay the Pay Day Class . . . . [and] that each of the putative class members is entitled to penalties . . . for each pay period during the relevant time." *Id.* at 5, ¶ 9(d). Defendant makes the same assertions as to the Wage Statement Class (for failure to provide complete and accurate wage statements) and the Waiting Time Class (for failure to pay in accordance with state law). *Id.* at 5, ¶ 9(e)–(f). Defendant also explains that 25 percent of damages for attorneys' fees were added, because this amount is regularly applied. *Id.* at 7, ¶ 9(g). Finally, Defendant states "Plaintiffs have alleged . . . an amount in controversy that well-exceeds $5 million." *Id.* at 7, ¶ 13.

Attached to the Notice of Removal is the Declaration of Evelyn Miles, ECF No. 1-4 ("Miles Decl."). Miles is the Director of Human Resources and provides the underlying number of employees, average pay, and the number of weeks worked to support Defendant's Notice of Removal. Miles Decl. at 1–2. Based on the allegations in the removal notice and in Plaintiffs' Complaint—that employees were required to travel every day—Defendant meets the low threshold required to state a plausible allegation that the amount in controversy exceeds $5,000,000. *See Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) (quoting *Dart*, 574 U.S. at 89) ("[A] defendant 'may simply allege or assert that the jurisdictional threshold has been met . . . .'")

"Whether a CAFA defendant may assume a 100% violation rate has become a common question that requires parsing a Plaintiff's allegations." *Cummings v. G6 Hosp. LLC*, No. 19-cv-00122-GPC-LL, 2019 WL 1455800, at *2 (S.D. Cal. Apr. 2, 2019) (quoting *Vasquez v. Randstad US, L.P.*, No. 17-cv-04342-EMC, 2018 WL 327451 at *3 (N.D. Cal. Jan. 9, 2018)). Use of a 100 percent violation rate is reasonable if: (1) it is supported by the allegations in the plaintiff's complaint, and (2) the defendant sets forth evidence that the claimed violations would have been committed 100 percent of the time. *Cummings*, No. 19-CV-00122-GPC-LL, 2019 WL 1455800, at *2 (citing *Ibarra*, 775 F.3d at 1198–99; *Moreno v. Ignite Restaurant Group*, 2014 WL 1154063, *5 (N.D, Cal. Mar. 20, 2014)). Here, Defendant has met its burden in establishing the reasonableness of the 100 percent violation rate.

      As an initial matter, it is important to note that all of Plaintiffs' claims for relief relate to Plaintiffs' core allegations that employees were required to travel to a designated break and clock-in area. Plaintiffs' claims for failure to pay all wages earned and overtime wages, as well as failure to authorize/permit meal and rest breaks, all specifically allege that employees were required to travel to the designated area "every day." Compl. at 22–23, ¶ 54(a)–(b); 24, ¶ 64(a)–(b); 27–28, ¶ 74(a); 29, ¶ 83(a). Furthermore, Plaintiffs' claims regarding failure to timely pay earned wages and failure to provide accurate and complete wage statements are described as derivative of those claims for to failure to pay all wages earned, failure to pay overtime, and failure to authorize/permit meal and rest breaks. *See id.* at 31, ¶ 95; 32, ¶ 99. As to Plaintiffs' claims for unfair business practices and failure to pay timely wages upon separation of employment, Plaintiffs allege the failure was a result of Defendant's policies, practices, and/or procedures, which Plaintiffs describe as Defendant's failure to pay overtime wages, meal period premiums, and rest period premiums. *See id.* at 34, ¶¶ 109–10; 35, ¶ 117. Because all claims for relief stem from Plaintiffs' allegations regarding travel time, the Court accepts Defendant's argument that all claims (at least in part) rely on the physical layout of Defendant's facility. *See* Oppo. at 10. In its Notice of Removal, Defendant cites Plaintiffs' allegations that employees were

required to travel to a designated break and clock-in area. *See* ECF No. 1 at 4–6, ¶¶ 12(a)–(c). Defendant bases its use of a 100 percent violation rate on these allegations and the placement of the locations to which employees were required to travel. *See id.*

Plaintiffs rely on *Ibarra* and *Hayes* in arguing that because Plaintiffs allege a pattern and practice of violations, Defendant's use of a 100 percent violation rate was unreasonable. Motion at 13–14. Plaintiffs are correct "that a 'pattern and practice' of doing something does not necessarily mean always doing something." *Ibarra*, 775 F.3d at 1198–99. However, unlike in *Ibarra* and *Hayes*, in addition to alleging a pattern and practice, Plaintiffs also allege that employees were required to travel "every day," given the location of the designated clock-in and break area. *See Ibarra*, 775 F.3d at 1198–99 (explaining that the complaint alleged a pattern and practice of violations, but not that the pattern and practice was universally followed); *Hayes v. Salt & Straw, LLC*, No. CV 20-03063-CJC-KSX, 2020 WL 2745244, at *2 (C.D. Cal. May 27, 2020) (discussing plaintiff's allegations of a pattern and practice of not paying appropriate wages and bonus pay, while noting that plaintiff had "not alleged any other facts about [the defendant's] practices and policies, the frequency of the alleged Labor Code violations, or the resulting damages.").

As explained above, all claims for relief relate to Plaintiffs' core allegations that employees were required to travel to and from a designated location on a daily basis. Defendant's Notice of Removal cites Plaintiffs' allegations that employees spent time traveling to and from the designated break and clock-in area, explaining the 100 percent violation rate was used due to the physical worksite layout. ECF No. 1 at 4–6, ¶ 12(a)–(c). Defendant's Opposition further explains that because Defendant could not alter the physical layout of the facility on a day-to-day basis—and due to Plaintiffs' allegations that employees had to travel "every day"—the alleged violations would have occurred "every time an employee clocked in or out," or took a meal or rest break. Oppo. at 10. The Court accepts Defendant's argument and finds it reasonable to assume a 100 percent violation rate, because Plaintiffs allege employees were required to travel to a designated location

"every day," and the physical layout of the facility could not be altered day-to-day.

Aside from the 100 percent violation rate, Plaintiffs do not challenge the underlying numbers[2] Defendant provides as evidence. *See* Zielinski Decl. Although Plaintiffs are not required to submit evidence or alternative violation rates, the only evidence available to the Court weighs in favor of removal. Because Defendant has met its burden of establishing that it relied on reasonable assumptions in alleging the amount in controversy, the Court need not conduct an in-depth analysis of the calculations and accepts Defendant's evidence supporting the $11,547,287.90 sum. *See* Oppo. at 14–21; Zielinski Decl. at 4–5, ¶¶ 7–10. Therefore, the Court finds the amount in controversy exceeds $5,000,000. Accordingly, the Court **DENIES** Plaintiffs' Motion to Remand.

### B. Attorneys' Fees

Plaintiffs' Motion to Remand seeks attorneys' fees in the amount of $5,775.00. Motion at 15–16. Because the Court denies Plaintiffs' Motion to Remand, Plaintiffs' request for attorneys' fees is also **DENIED**.

### V. CONCLUSION

For the above reasons, the Court **DENIES** Plaintiffs' Motion to Remand and Request for Attorneys' Fees.

**IT IS SO ORDERED.**

DATED:   April 29, 2022

_____
**HON. ROGER T. BENITEZ**
United States District Judge

---

[2]   The Court notes the Declaration of Beth Zielinski asserts the total number of hourly, non-exempt former employees whose employment was terminated between July 7, 2018 and September 8, 2021, is forty-four. Declaration of Beth Zielinski, ECF No 10-1 ("Zielinski Decl.") at 5, ¶ 12. Miles previously declared that eighty employees fell into this category. Miles Decl. at 1–2, ¶ 3. Zielinski explains that Miles based her review on human resource records but the payroll records—on which Zielinski based her review—more accurately reflects a figure of forty-four instead of eighty. Zielinski Decl. at 5, ¶ 12. Plaintiffs do not challenge either Declaration, or Zielinski's explanation of Miles' previous figure.